FINGER v. HUNTER.

(Filed June 13, 1902.)

1. HUSBAND AND WIFE—*Married Woman—Separate Property—
     Mechanics' Lien—The Code, Secs. 1781, 1826, 1827, 1832—Acts
     1901, Chap. 617—The Constitution, Art. X, Sec. 6.*

   Acts 1901, Chap. 617, amending The Code, Sec. 1781, so as to
     allow a laborer's lien to be taken on the property of a mar-
     ried woman, is constitutional.

2. JURISDICTION—*Justices of the Peace—Mechanics' Liens—Mar-
     ried Women—Acts 1901, Chap. 617.*

   An action against a married woman for less than $200 for ma-
     terial used in building a house must be brought before a
     justice of the peace.

ACTION by Finger & Pickens against H. L. Hunter and
wife, heard by Judge *H. R. Starbuck,* at February Term,
1902, of the Superior Court of MECKLENBURG County. From
a judgment for the defendants, the plaintiffs appealed.

*Clarkson & Duls,* and *Plummer Stewart,* for the plaintiffs.
*McCall & Nixon,* for the defendants.

CLARK, J. The *feme* defendant, a married woman, bought
of plaintiffs certain locks, hinges and sash-cords for the im-
provement of her house. They were so used, and a lien
therefor was regularly filed against her said house and lot,
and this action is brought against her (her husband being
joined) for enforcement of the same. The sole question
raised is whether the General Assembly had the power, under
the Constitution, to enact Chapter 617, Laws 1901. That
statute reads as follows:

"Section 1781 of The Code of North Carolina is amended
by adding to said section the following: And this section
shall apply to the property of married women, when it shall

appear that such building or buildings were built or repaired on her land, with her consent or procurement, and in such case she shall be deemed to have contracted for such improvements."

The Constitution, Article X, Section 6, provides that a married woman shall retain the same rights over her property as if she were unmarried, the only restriction being that she can not "convey" without the written assent of her husband. The restraints upon her power to "contract" rest upon the statute, not upon the Constitution, and of course can be removed by statute. There is no prohibition upon the Legislature to do so, and indeed the Court in many instances has indicated to the Legislature that justice might be facilitated by more liberal legislation in that regard. In *Weir v. Page,* 109 N. C., 220, where the work was done on the wife's house, the contract being made by her husband without her authority, but she saw the work done without objection and appropriated the increased value, the Court said that in justice she ought to be made to pay, but for the statute. The Court, DAVIS, J., added that a married woman "having in relation to her separate estate all the rights of a *feme sole,* whether and to what extent her protecting disabilities ought to be removed and her liabilites in dealing with her separate estate as to all persons other than her husband, made commensurate with her rights, and whether such alterations in the law would not prevent much injustice and many frauds, are questions to be addressed to the wise consideration and sound discretion of the law-making power."

In *Pippen v. Wesson,* 74 N. C., 437, it is said: "The Legislature may abolish all the incapacities of married women and give them full power to contract as *femes sole.*" This is cited with approval in *Bank v. Howell,* 118 N. C., 273, where the Court sets out in full the brief New York statute which confers upon married women the unrestricted

power to contract, and broadly intimates to the General Assembly that the passage of a similar statute here "might cure many abuses which now exist, and would be more in accord with the liberal intent of the constitutional provision as to married women. Constitution, Article X, Section 6."

The Code, Sec. 1827, authorizes a married woman to contract fully, as to all matters, by complying with certain requirements, thus making her a free-trader. Section 1832 gves her the same full power without complying with those requirements in certain cases, and this was held constitutional. *Hall v. Walker,* 118 N. C., 377; *Brown v. Brown,* 121 N. C., 8, 38 L. R. A., 242. Section 1826 disables her to make certain contracts without the written assent of her husband, thus recognizing her full power to contract if not thus restrained. These and other sections all show that the restriction upon a married woman's power to contract is statutory, and the General Assembly, when it has moved at all, has gone in the direction of greater freedom to contract.

The defendant contends that, as the Constitution forbids a married woman to "convey" without the written assent of her husband, therefore if the General Assembly can empower her to "contract" without the husband's written assent, she can be made liable on her contract (as here), and thus "she can do indirectly what she could not do directly." But the Constitution makers knew the broad distinction between "contracts" and "conveyances," and the Legislature can not be held under inhibition to permit the former because there is a prohibition of the latter. For near two and a half centuries the law has invalidated oral conveyances of land, but it has never been conceived that an oral contract (unless otherwise made invalid) could not be enforced, because to do so might subject the debtor's real property and thus "do indirectly what can not be done directly."

The power of the General Assembly to remove all disabili-

ties upon married women and give them as full power to contract as if single, is stated in *Pippen v. Wesson, supra,* and has been uniformly recognized down to the present. When the Court has divided on the subject, it has only been whether the Legislature, in a given case, had restricted the power to contract, or, in view of the constitutional provision, had the authority to restrict it.

The proceeding being for a lien under $200, was properly brought in the Justice's Court. *Smaw v. Cohen,* 95 N. C., 85. Besides, the statute making a married woman in these circumstances liable for her contract, she is liable to an action before a Justice of the Peace just as she would be if a free-trader, or for an ante-nuptial debt. *Neville v. Pope,* 95 N. C., 346.

Upon the facts found, judgment should have been entered for the plaintiffs.

Reversed.

DOUGLAS, J., concurring in result. I concur in the result of the opinion of the Court upon the understanding that it does not conflict with the previous opinions of this Court, in some of which my own views are fully expressed.

However there are some expressions in the opinion which do not seem necessary to a decision of the case, and which may be capable of misinterpretation in the future. Hence my motive for concurrence only in the result.