In re DINGLEHOEF et al.

(District Court, E. D. North Carolina. July 6, 1901.)

BANKRUPTCY—EXEMPTION—RESIDENCE—INTENT TO RETURN.

Where a bankrupt's husband was never a resident of the state of North Carolina, and she was never therein except that they visited and boarded in the state a short time soon after their marriage, she is not a resident, or entitled to the exemption provided by the state constitution (article 10, § 1) to "any resident of this state," "to be selected by such resident," though she testifies that she is absent from the state temporarily, and intends to return thereto, since there can be no intention to return without a former or actual bona fide residence to return to.

In Bankruptcy.

Russell & Gore, for petitioner, Mayme H. Dinglehoef.
Bellamy & Poschau, for creditors.

PURNELL, District Judge. The firm of Dinglehoef Bros. was duly adjudged bankrupt, and a personal property exemption allowed by the constitution and laws of North Carolina allotted to O. F. Dinglehoef, the resident member of the firm. Mayme H. Dinglehoef, named in the petition as a member of the firm of Dinglehoef Bros., now claims a $500 personal property exemption under the same law, as a member of the firm. To the allotment of the exemption the creditors object, on the ground that Mrs. Mayme H. Dinglehoef is not a resident of North Carolina. The referee, Samuel H. MacRae, finds the following facts:

"That prior to her marriage with M. J. Dinglehoef, one of the firm of Dinglehoef Bros., conducting a jewelry business in Wilmington, N. C., Mayme H. Dinglehoef was a nonresident of North Carolina, having been born and raised in Georgia and Tennessee, and married at Apison, Tenn. In the summer of 1898 she moved to North Carolina, where she remained until the early part of 1899, when she returned with her husband to Tennessee. Her husband died soon after, and she has never since returned to North Carolina. She has no house or lot in North Carolina, nor has she any blood relatives within the state, and since her husband's death she has been visiting friends in Tennessee and Alabama, and is now with her mother and sisters in Nashville, Tenn. Her mother is an invalid, and she is remaining with her to nurse her; and the said Mayme H. Dinglehoef testified she intends returning to North Carolina as soon as her mother's health will permit. It nowhere appears her husband was ever a resident of North Carolina, and, in the opinion of the referee, the facts do not bring her within the letter or spirit of the constitution of North Carolina, so as to entitle her to personal property exemption."

—And adjudged "Mayme H. Dinglehoef is not entitled to the personal property exemption."

The finding of facts and the conclusion of law by the referee are in all respects affirmed. Following the decisions of the supreme court of North Carolina, this court has been constrained to hold in several cases that members of a partnership are each entitled to a personal property exemption, to be allotted out of the partnership assets, provided it affirmatively appears they have no individual personal property exemption, and the other partners assent thereto. In re Stevenson (D. C.) 2 Am. Bankr. R. 230, 93 Fed. 789.

Article 10, § 1, of the constitution of North Carolina is as follows:

"The personal property of any resident of this state to the value of five hundred dollars, to be selected by such resident, shall be, and is hereby, exempted from sale under execution or other final process of any court, issued for the collection of any debt."

This article has been before the courts frequently, and construed both by the supreme court of the state and the supreme court of the United States, but not as to the question now presented. The right of claimant to the exemption depends on whether she is now a resident of the state, or, having been a resident, has been temporarily absent with a mind to return,—animus revertendi; for the mind to return cannot avail unless a bona fide residence had been acquired at the time of departure. The decision relied on by counsel for petitioner (Chitty v. Chitty, 118 N. C. 647, 24 S. E. 517,

32 L. R. A. 394) emphasizes this view of the law. That, too, was an extreme case. Chitty was a fugitive from justice, left the state to avoid prosecution for an infraction of the law, and was absent two years or more; but he had been a resident of the state, and left a family and property in the state, to which he was always anxious and intended to return as soon as circumstances permitted. He had not become a citizen of another state or engaged in any permanent business elsewhere. When he testified he had carried with him at all times the animus revertendi, the court held he had never ceased to be a resident of the state. This is, as said by counsel, the latest utterance of the highest court of the state on the subject, probably the strongest in their favor; and, to use a facetious expression in the brief, "dead oodles" of authority may be found to the same effect. In fact, all the decided cases on the subject of animus revertendi recognize the basis of all rights dependent thereon to be an actual bona fide residence to which to return. There can be no such mind or intention without a former or actual bona fide residence to return to.

Did Mayme H. Dinglehoef ever acquire such residence in the state? There is no evidence that her deceased husband, M. J. Dinglehoef, ever acquired a residence in North Carolina. The wife and children only succeed to the right of homestead in the event of the death of the husband or father. They are not entitled to it after his removal from the state, though they may remain. Finley v. Saunders, 98 N. C. 464, 4 S. E. 516. The petitioner's claim is dependent on her husband having been a resident of the state, she having been in the state only once with him for a short period. The referee does not find, and it does not appear in the depositions, that he was a resident of North Carolina.

Residence is personal presence in a fixed and permanent abode. Roosevelt v. Kellogg, 20 Johns. (N. Y.) 208; Sears v. City of Boston, 1 Metc. (Mass.) 251. Residence indicates permanency of occupation, as distinct from lodging or boarding or temporary occupation, but does not include so much as domicile, which requires an intention continued with residence. Inhabitants of Jefferson v. Inhabitants of Washington, 19 Me. 293; 2 Kent, Comm. (10th Ed.) 576. Claimant does not and cannot claim to have become a resident of North Carolina unless it was during her sojourn at a boarding house in Wilmington, soon after her marriage, or to have any right to the exemption, except such as she acquired through her deceased husband. He was not a resident of the state. She has never been a resident, and the declared intention to return to the state cannot avail her. The decision of the referee is affirmed.